**RILEY v. ATMAR et al.   (No. 7711.)**

(Court of Civil Appeals of Texas. Galveston. May 17, 1919.   Rehearing Denied June 5, 1919.)

1. **FRAUD ☞59(1)—TENDER BY PURCHASER—MEASURE OF DAMAGES.**

Where vendor, having procured purchaser for land by fraudulent representations as to merchantable timber standing thereon, refused to accept purchaser's proffered return of the land at the same price paid therefor by purchaser, vendor cannot complain of judgment given purchaser for the value of the timber represented to have been standing upon land, instead of the difference between the consideration for the purchase and the aggregate value of land and timber.

2. **VENDOR AND PURCHASER ☞334(2)—FRAUD—ELECTION OF REMEDIES.**

In the ·case of fraud, purchaser may either stand upon the bargain and recover damages, or rescind contract, return the thing bought, and get back what he has paid.

3. **FRAUD ☞59(3)—MEASURE OF DAMAGES.**

Purchaser's measure of damages for having been induced by fraud to purchase property is the difference between the value of the property and the price paid.

Error from District Court, Trinity County; E. A. Berry, Judge.

Suit by L. P. Atmar and others against E. J. Riley. Judgment for plaintiffs, and defendant brings error. Affirmed.

Kester Denman, of Lufkin, for plaintiff in error.

Dean, Humphrey & Powell, of Huntsville, and Nelms & Platt, of Groveton, for defendants in error.

GRAVES, J.   E. J. Riley owed the First National Bank of Groveton, Tex., $4,700 in promissory notes. Being unable to pay them, he agreed with L. P. Atmar, acting as trustee for the bank, to convey to him in that capacity for the bank's benefit, and in full settlement of the indebtedness, 397.5 acres of land in Tyler county, Tex., and all merchantable pine timber upon five other tracts of land in the same county, aggregating 474.8 acres; Riley first ostensibly showing the five tracts by pointing out their lines to the bank's timber estimator, representing that he had misplaced the field notes, but knew the land shown to be the right land, and that there was then standing thereon a total of

1,346,200 feet of merchantable pine, the agreed price at which it was taken in upon the debt being $2 per thousand feet. Deed to both the land sold in fee and what purported to be the five tracts upon which the timber agreed upon stood was accordingly made, and the bank canceled and surrendered the notes to Riley.

Subsequently, upon further investigation by the use of the field notes and descriptions contained in his deed to the bank's trustee, it was found that Riley had in fact conveyed other and different tracts than those so pointed out by him as containing the quantity of timber agreed upon, and that there was no merchantable pine at all on the five tracts covered by the description given in his deed.

The bank's trustee thereupon filed this suit, setting up the facts of the transaction between them, alleging that through the fraud of Riley in representing that he was conveying 1,346,200 feet of merchantable pine timber, when in reality he was knowingly conveying none at all, which had induced the cancellation and surrender of the notes, the the trustee had been misled to the injury of the bank he represented in the sum of $2,692.40, the total consideration for the quantity of timber supposed to have been bought at $2 per thousand feet. He prayed for judgment for that sum with 6 per cent. interest from the date of the deed, at the same time tendering Riley a reconveyance of whatever timber may have passed by the deed, also offering to resell and retransfer to him the 397.5 acres for the sum of $2,000, under averments that its value had at no material time exceeded that amount, and that it had been originally accepted upon a valuation of about $5 per acre as a cancellation of that much of the indebtedness. The usual further prayer for general and special relief, both legal and equitable, was added.

After general and special demurrers, Riley joined issues upon the facts thus averred, but did not avail himself of the opportunity tendered to take back at $2,000 the land conveyed in fee.

Trial before the court without a jury on evidence for the bank alone, Riley presenting none, resulted in a judgment for the bank's benefit in the sum of $2,692.40 with interest—upon a finding that the timber actually conveyed by the deed was without any commercial value—together with a revesting of such title thereto as he originally had in Riley, on his paying the amount of this judgment, interest, and costs.

Riley appeals from the judgment contending through several assignments that the contract declared upon for the sale of both the land and the timber through the medium of but one deed was a single indivisible one, and that the measure of the bank's damages as a result of having been induced by fraud to make it was the difference between the amount of the indebtedness canceled, $4,700, and the aggregate value of the land and timber received, taken, and considered together. From that position as a premise, it is then argued that no value was shown for the land conveyed in fee, which the bank kept, and therefore no actual loss upon the transaction as a whole was proven.

It is not thought this contention can be sustained under the conditions here presented. The proceeding was one in equity, and the court was called upon in the exercise of its equitable powers to do justice between the litigants in the particular circumstances before it. There may be doubt as to whether the contract was an entirety, or separable into two distinct parts, but in the view taken by this court it is not deemed necessary to determine that matter one way or the other. The facts are undisputed, contravening the very face of the agreement itself, that no merchantable timber of any commercial value at all was turned over to the bank, and that it not only tendered the return of whatever quantity of any character there may have been passed to it, but likewise offered to give back the land also for the remainder of the total consideration agreed upon for both properties, after the specific part of it the timber constituted had been deducted.

[1] In these circumstances, the plaintiff in error, not having chosen to accept such proffered return of the land at the same price he fraudulently induced the other party to take it from him at, is in no position to still claim himself equitably entitled to rescind the whole of the trade, or none. The matter of making the restitution extend to and embrace all of the property he conveyed being thus within his own choice, he will not be heard to complain, if his adversary does not, that he did not so will it, nor that a judgment against him for only the actual and stipulated value of the balance of the property he agreed to deliver, but did not, was inequitable, unjust, or not a proper measure of damage suffered. Equity will not favor a litigant to that extent, nor lend its sanction to such an attitude, it is thought, whether the contract be entire or divisible. Hammond v. Pennock, 61 N. Y. 153.

This conclusion determines the merits of the appeal and renders further discussion unnecessary, since no other ground of error or reason for the insistence that reversal should be ordered is presented.

[2, 3] It is oft-repeated and familiar law that in cases of fraud the purchaser has a choice of remedies, either to stand upon the bargain and recover damages, or to rescind the contract, return the thing bought, and get back what he has paid (Blythe v. Speake, 23 Tex. 429; Scalf v. Tompkins, 61 Tex. 476); the measure of damages being the dif-

ference between the value of the property and the price paid (Davenport v. Anderson, 28 S. W. 922; Farmer v. Randel, 28 S. W. 384; Greenwood v. Pierce, 58 Tex. 130).

It cannot be properly said, we think, that any violence was done to these well-settled rules in the trial court's action in this cause, and its judgment will be affirmed.

Affirmed.