**Nathan BAULD, Appellant,**

v.

**Richard DOYLE, Appellee.**

**No. 11693.**

Court of Civil Appeals of Texas.

Austin.

July 23, 1969.

Rehearing Denied Oct. 15, 1969.

J. Hubert Lee, Austin, for appellant.

McGinnis, Lochridge, Kilgore, Byfield, Hunter & Wilson, C. Morris Davis, Austin, for appellee.

O'QUINN, Justice.

Richard Doyle brought this lawsuit against Nathan Bauld seeking damages for alleged breach of a written contract to purchase a residence and lot located in Austin.

Upon hearing on motion for summary judgment filed by Doyle, the trial court entered judgment against Bauld in the sum of $3,450, allowing credit for $1,000 earnest money.

Bauld has appealed from the summary judgment and assigns error under eleven points, contending under seven points there are issues of material fact and under three points urging questions of law as to construction and validity of the contract. The last point pertains to failure of Doyle to furnish abstract of title.

Nathan Bauld and his wife executed two contracts, one dated November 19, and the other November 20, 1967, the second being substituted for the first. Again on November 30, 1967, a written contract covering the same property at the same sale price, but with revised financing provisions, was executed by Bauld but not by his wife. Mrs. Bauld declined to sign the contract and on December 15 filed suit for divorce.

The purchase price of the property was $42,400, with provision made for a down payment of $5,200, including earnest money of $1,000, the contract being conditioned upon securing a 25-year conventional mortgage loan for $37,200. The contract provided for closing the purchase on or before January 1, 1968.

Shortly after January 1 Doyle called on Bauld for performance under the contract, and Bauld advised Doyle of his intention not to buy the property. Doyle later gave notice to Bauld that he intended to sell the house and lot, and on January 28, 1968, entered into a contract to sell the property for $37,950, a trade that was completed about February 19. Afterwards Doyle brought suit against Bauld for damages of $4,450, acknowledging that $1,000 in escrow would reduce his damages by that amount.

Appellant Bauld asserts that the following issues of fact were raised which preclude the rendition of summary judgment:

1) Whether the market value of the property was $37,950 at the time of the alleged breach.

2) Whether Mrs. Bauld, wife of appellant, made an application for a loan of $37,200.

3) Whether satisfactory commitment for a 25-year conventional mortgage loan in the amount of $37,200 was obtained for Bauld alone.

4) Whether such commitment was obtained for both Bauld and his wife.

5) Whether there was a condition precedent that the contract would not be binding until signed by Mrs. Bauld.

6) Whether there was an implied condition precedent that Mrs. Bauld would execute the purchase money note and deed of trust to secure the note to obtain the loan.

7) Whether there was a condition precedent that the property was to be used as a home for Bauld and his wife.

■ If the evidence raises issues of fact to be determined by a court or jury, the summary judgment is not proper and must be set aside. Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93 (1954). In determining whether there are issues of material fact, an appellate court is required to view all the evidence in the light most favorable to the party against whom the trial court entered judgment. The court is also required in such review to disregard the conflicts in the testimony and indulge every intendment reasonably deducible from the evidence in favor of the appellant. Gaines v. Hamman, 163 Tex. 618, 358 S.W. 2d 557 (1962); Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952); Smith v. Bolin, supra.

■ The burden is on the party moving for summary judgment to show there is no issue of material fact, and all doubts as to the existence of a genuine issue are resolved against the movant. Great American Reserve Insurance Company v. San Antonio Plumbing Supply Company, 391 S.W. 2d 41 (Tex.1965); Tigner v. First National Bank, 153 Tex. 69, 264 S.W.2d 85 (1954).

■ We have observed the rules laid down by the Supreme Court in reviewing the evidence and we conclude that there exists a genuine issue of material fact as to whether a satisfactory commitment for a 25-year conventional mortgage loan, in the amount of $37,200, was obtained for Bauld.

■ The law is well settled that when performance under a contract is contingent upon a condition precedent, there is no obligation to perform until the contingency has occurred. Baker v. Fell, 135 Tex. 375, 144 S.W.2d 255 (1940); Pena v. Security Title Co., 267 S.W.2d 847, Tex.Civ.App., San Antonio, no writ (1954); Reinert v. Lawson, 113 S.W.2d 293, Tex.Civ.App., Waco, no writ (1938); Couch v. Stewart, 200 S.W.2d 642, Tex.Civ.App., Galveston, no writ (1947); Shaper v. Gilkison, 217 S.W.2d 878, Tex.Civ.App., Austin, writ ref. n. r. e. (1949).

Contemporaneously with, or shortly after, execution of the contracts of November 19 and November 20, Bauld and his wife jointly applied to Lumbermen's Investment Corporation for a loan to use in buying the Doyle property. Bauld testified by deposition that this application, for a loan of $38,100, was rejected by Lumbermen's Investment.

Upon signing the contract of November 30, Bauld alone applied for a loan of $37,200. Bauld testified that no one informed him prior to January 1 that a loan was available. In January Doyle's attorney advised Bauld's attorney that "the loan is ready and waiting." By affidavit filed in opposition to the motion for summary judgment, Bauld stated that he had never seen the commitment proffering a loan for $37,200 and had not been informed of the terms of any commitment.

When Bauld's deposition was taken July 25, 1968, counsel for Bauld called upon counsel for Doyle " * * * to produce from his files [if he had it] * * * any written instrument showing that a loan

commitment was made by any financial institution, including Lumbermen's Investment Corporation." Doyle's counsel stated that he had "no such instrument in [his] file." The commitment called for is not found in the record.

The affidavit of the attorney for Mrs. Bauld in her divorce action was filed by counsel for Bauld in this case in opposition to the motion for summary judgment. The affidavit recites efforts by Mrs. Bauld's attorney to obtain from Mortgage Investment Corporation and from Lumbermen's Investment Corporation copies or other evidence of a loan commitment. The attorney states that "no commitment letter or information was subsequently provided" the attorney or Mrs. Bauld.

Attached to Doyle's motion for summary judgment appears the affidavit of Wayne McDonald, not otherwise identified than as "an employee of Lumbermen's Investment Corporation," who stated that he was "personally cognizant that Dr. Nathan Bauld and wife in November, 1967, made an application for a conventional mortgage loan in the amount of $37,200." McDonald further stated, "I am personally cognizant that a commitment for a twenty-five year conventional mortgage loan in the amount of $37,200 was obtained through the Mortgage Investment Corporation from Metropolitan Life Insurance Company and Home Capital Funds, Inc., for Dr. Bauld and wife to be used as purchase money for * * * [the Doyle property] before January 1, 1968."

It is otherwise undisputed that Mrs. Bauld made no application in November, 1967, for a loan in the amount of $37,200. The only application for a loan of $37,200 was made by Bauld in which he was not joined by his wife. The commitment McDonald swore to is described as one for Bauld and his wife. The commitment referred to is not attached to or otherwise incorporated in the affidavit, nor are the terms of a commitment disclosed by the McDonald affidavit or by other evidence.

Doyle's burden to prove that a commitment for a twenty-five year conventional mortgage loan of $37,200 was available to Bauld in December, 1967, is not met by an affidavit stating that in response to an application made by Bauld and his wife a loan was available to the two of them. By his pleadings Doyle contends only that a commitment was available to Bauld, which was not proved.

Doyle argues that even without proof of a loan being available to Bauld, the trial court correctly held with Doyle because Bauld failed to pursue his application for a loan with diligence and did not make a good faith effort to obtain a loan. Doyle relies upon Huckleberry v. Wilson, 284 S.W.2d 205, Tex.Civ.App., El Paso, writ dism. (1955) and Nelson v. Jenkins, 214 S. W.2d 140, Tex.Civ.App., El Paso, writ ref. (1948).

Doyle insists in his brief that Bauld "after making application made no effort to pursue the application." In his deposition Bauld admitted that he made no effort "to contact Lumbermen's to see if [the] loan was approved." Bauld also testified, however, that although he did not know definitely the loan had not been approved before January 1, he "had a strong suspicion that it could not have been." In this connection Bauld stated, " * * * Lumbermen's Investment was aware of the fact that I was being sued for divorce, and this purchase would be a real estate purchase, and any loan I would get would certainly be at a higher rate than I could accept." Bauld testified he was never notified by Lumbermen's "about a closeing date" or that the loan he applied for had been approved. Bauld and his wife had been turned down on an application for a loan of $38,100, only $900 more than the loan Bauld applied for under the contract of November 30.

It becomes immaterial whether Bauld diligently pursued the loan application or was indifferent to it, if the application he made to Lumbermen's Investment in fact

resulted in a satisfactory loan under the contract being made available to him prior to January 1. Since we have held that whether a loan was available to Bauld before January 1 remains an issue of material fact, the contention that Bauld did not pursue the loan application with diligence, even if shown, would not alter our disposition of the case.

Under our holding that issues of material fact exist, requiring reversal of the judgment and remand of the cause, we do not reach the remaining points of error. Upon a trial of this cause, with a full development of the facts, the issues will not necessarily remain the same as those in this record.

The judgment of the trial court is reversed and the cause is remanded for trial.

Reversed and remanded.

PHILLIPS, C. J., not sitting.